UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION


| | | |
|---|---|---|
| KELLY PATRICK, *Pro Se*, | ) | Case No.: 1:21 CV 1155 |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| | ) | |
| v. | ) | JUDGE SOLOMON OLIVER, JR. |
| | ) | |
| DANIEL KASARIS, *et al.*, | ) | |
| | ) | |
| Defendants | ) | <u>ORDER</u> |


Currently pending before the court in the above-captioned case is Defendants' Daniel Kasaris ("Kasaris") and Damian Billak ("Billak") (collectively, "Defendants") Motion for Sanctions pursuant to Federal Rule of Civil Procedure 11 ("Rule 11") ("Motion"). (ECF No. 21). For the following reasons, the court denies Defendants' Motion (ECF No. 21).

## I. BACKGROUND

### A. Factual Background

This action arises out of Plaintiff's efforts to expose alleged public corruption fueled by claims of nepotism and abuse of power that resulted in supposed constitutional violations. Plaintiff's allegations are set out below.

Plaintiff, *Pro Se*, was married to John Patrick ("Mr. Patrick"), from May, 2001 to June, 2011. (Compl. ¶¶ 18, 25, ECF No. 1.) During the marriage, Plaintiff developed a close familial bond with Mr. Patrick's family, including his brother, Kasaris, who was then a Cuyahoga County prosecutor. (*Id.* ¶ 19; *see also* Defs.' Mot. at PageID # 216, ECF No. 7.) In 2009, Plaintiff was allegedly

assaulted by Mr. Patrick, resulting in her hospitalization and the seizure of narcotics, allegedly possessed by Mr. Patrick, from their home. (*Id.* ¶ 22.) Plaintiff claims that Kasaris    acting in his official capacity as a County prosecutor    intervened on behalf of his brother, Mr. Patrick, and prevented North Olmsted officials from charging or prosecuting Mr. Patrick. (*Id.* ¶¶ 23 24.) According to Plaintiff, Kasaris acknowledged his intervention in Mr. Patrick's matter by bragging about it for years. (*Id.*) To bolster her claim, Plaintiff states that she has discovered email evidence of Mr. Kasaris's intervention. (*Id.* ¶ 36, Ex. G.)

In 2021, Plaintiff founded "Insidethemind.net"    an investigatory online crime blog    where she began blogging about Kasaris's abuse of power. (*Id.* ¶¶ 40 42.) In addition to her blog posts, Plaintiff mailed a series of postcards about Kasaris. (*Id.* ¶ 52.) In response, in May 2021, Billak, Kasaris's attorney, sent a cease-and-desist letter to Plaintiff, stating that she had falsely communicated defamatory and disingenuous statements about Kasaris, and that she was to cease her communications regarding Kasaris or risk being subject to legal action. (*Id.* ¶¶ 54 55, Ex. A.) Plaintiff claims that she immediately suspended publication of her blog posts and mailings for fear of criminal prosecution. (*Id.* ¶ 57.) More specifically, she alleges that Kasaris, as an Assistant Ohio Attorney General, not only has the power to prosecute her, but also possesses deep ties to the law enforcement and legal communities throughout the state. (*Id.* ¶¶ 58 61.) Finally, Plaintiff states that Kasaris has a long history of using his office to threaten bloggers who sought to expose his misdeeds. (*Id.* 62 63, Ex. P, Q.)

**B. Procedural Background**

Plaintiff initiated this action on June 8, 2021, when she filed her Complaint (Compl., ECF No. 1), seeking a declaratory judgment that her blogs and postcards regarding Kasaris were legal, and alleging violations of her First Amendment and Equal Protection rights. (*Id.* ¶¶ 65 76.) On June 30, 2021, Defendants' attorney, David C. Comstock, Jr. ("Comstock"), sent Plaintiff a letter

communicating his intention to file a motion for sanctions against Plaintiff if she continued to pursue her claims against Defendants because, in his opinion, *Viola v. Kasaris*, No. 2:16-cv-1036, 2017 WL 735588 (S.D. Ohio 2017), *aff'd* No. 2:16-cv-1036, 2017 WL 1154190, presented analogous arguments and claims and was dispositive of Plaintiff's action. (Mot., Ex. A., ECF No. 21-1.) In his letter, Comstock informed Plaintiff that:

> [t]he issues which you have raised are almost identical to those addressed [in *Viola*] . . . For your benefit, I have enclosed copies of both of these case decisions. I have filed a motion to dismiss pursuant to Civ. R. 12(b) and the appropriate statute of limitations. As a pro se litigant, I will provide the benefit of the doubt to you and will assume that prior to filing this complaint you neither knew about the rulings in the *Viola* case nor had performed sufficient research regarding the statutory limitation period for 42 U.S.C. § 1983 claims. Thus, I will not seek sanctions against you for the filing of the complaint. However, Rule 11 also applies to parties who continue to advocate an action that is not supported by fact or law. Thus I am requesting that you voluntarily dismiss your complaint against the defendants in this case.

(*Id.* at PageID #415  16.) Plaintiff subsequently responded by refusing to withdraw her Complaint, stating that, "I stand by my complaint and my allegations that your client[s] acted under color of law to chill my First Amendment rights." (Mot., Ex. B at PageID #417, ECF No. 21-2.) In response, Comstock once communicated with Plaintiff, reiterating his belief that Plaintiff's action was futile, and requested that Plaintiff withdraw her Complaint or he would file a motion for sanctions. (Mot., Ex. C, ECF No. 21-3.) Again, Plaintiff declined to do so. (Mot., Ex. D, ECF No. 21-4.) In accordance with Rule 11's safe harbor provision, Comstock sent Plaintiff his proposed motion for sanctions on September 28, 2021. (Mot., Ex. E, ECF No. 21-5.); *see also* Fed. R. Civ. P. 11(c)(2) (stating that, "[the motion for sanctions] must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets."); *Shoemake v. Mansfield City School Bd. of Educ.*, 61 F.Supp.3d 704, 718 (N.D. Ohio 2014) (noting that Rule 11(c)(2) is colloquially known as the "safe harbor provision", and that the safe harbor provision is a prerequisite

before a party submits a motion for sanctions). Thereafter, on October 11, 2021, Plaintiff again communicated to Comstock, via mail, that she would not withdraw her Complaint. (Mot., Ex F., ECF No. 21-6.)

Defendants filed their Motion for Sanctions (ECF No. 21) on October 27, 2021. Plaintiff filed her Opposition (ECF No. 25) on November 24, 2021. On March 30, 2022, the court issued an Order (ECF No. 27), granting Defendants' Motion to Dismiss (ECF No. 7), but failing to address Defendants' instant Motion (ECF No. 21) for sanctions.

## II. STANDARD OF REVIEW

Under Rule 11, an attorney or unrepresented party who signs, files, or submits a pleading to the court "certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances":

> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11(b). Furthermore, "[i]f, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation." *Id.* 11(c)(1). The Supreme Court has held that, "'[t]he test for the imposition of Rule 11 sanctions in this circuit is whether the individual's conduct was reasonable under the circumstances.' " *Int'l Union,*

-4-

*United Auto., Aerospace & Agric. Implement Workers of Am. v. Aguirre*, 410 F.3d 297, 304 (6th Cir.2005) (quoting *Mihalik v. Pro Arts, Inc.*, 851 F.2d 790, 792 (6th Cir.1988)). This is "'an objective standard, intended to eliminate any "empty-head pure-heart" justification for patently frivolous arguments.'" *Nieves v. City of Cleveland*, 153 F. App'x 349, 353 (6th Cir.2005) (citing Fed. R. Civ. P. 11 advisory committee's notes to 1993 amendment). While, generally, a court holds *pro se* pleadings to "less stringent standards than formal pleadings drafted by lawyers," *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), *pro se* litigants must still abide by Rule 11's requirements and are not exempt from Rule 11 sanctions, "simply because they are not represented by counsel." *King v. IB Prop. Holdings Acquisitions*, 635 F.Supp.2d 651, 661 (E.D.Mich.2009); see also *Kaye v. Acme Invs., Inc.*, No. 08 12570, 2008 WL 4482304, at *1 (E.D. Mich. Oct.1, 2008) (stating that, "[p]ro se litigants must comply with Rule 11 no less than attorneys, and must make a reasonable inquiry as to whether the pleading in question is well-grounded in fact and warranted by existing law.").

### III. LAW AND ANALYSIS

In their Motion (ECF No. 21), Defendants assert four bases for why Plaintiff's continued pursuit of her action, after Comstock's letters communicating his opinion that Plaintiff's action was futile in light of *Viola*, warrants sanctions under Rule 11. First, Defendants state that Plaintiff had an obligation to research the facts and law prior to filing her case, and that she failed to do so because her Complaint presents "numerous factual issues and [a] pervasive lack of foundation [for her claims]. . . ." (Mot. at PageID #409, ECF No. 21.) Next, Defendants maintain that Plaintiff litigated her claims in bad faith because she continued to pursue her claims even after Comstock notified her that her claims were likely not supported by existed law. (*Id.* at PageID #410.) Third, Defendants argue that Plaintiff did not possess a good faith belief that her First Amendment rights had been abridged by Defendants' conduct  as she alleged in her Complaint (*See* ECF No.

1)    because Plaintiff continued to publish blog posts about Defendants, as recently as October 13, 2021, and therefore her claims of First Amendment retaliation and chilled speech are insincere. (*Id.* at PageID #410  11.) Finally, Defendants contend that sanctions against Plaintiff are appropriate to prevent further judicial abuses because Plaintiff is allegedly litigating her claims against Defendants in conjunction with Anthony L. Viola ("Viola")    a vexatious litigator who has repeatedly filed claims against Defendants in federal courts, alleging the same causes of actions as Plaintiff    and therefore, "sanctions are appropriate and necessary to deter plaintiff from filing her same, baseless claims in another venue." (*Id.* at PageID #411  413.)

Plaintiff counters on several grounds. First, Plaintiff argues that she is not a party to Viola's case, and therefore, the facts and law related to her present action are completely unrelated to any claims that Viola may have regarding Defendants. (Opp'n at PageID #453, ECF No. 25.) Next, Plaintiff maintains that she adequately investigated the underlying facts and law of her case, stating that, "the facts presented are within [my] own personal knowledge, and nothing beyond what [I have] personally observed, experienced or been informed of, and the associated inferences related to that information, is necessary to conduct a reasonable inquiry." (*Id.*) Finally, Plaintiff argues that her First Amendment claim was filed in good faith because the underlying facts of her case support an inference that Defendants had infringed her First Amendment rights.(*Id.* at PageID #454.) To bolster her assertation, Plaintiff lists a number of facts that she believes supported her First Amendment claim. (*Id.*) After considering the parties' arguments and relevant case law, the court finds Plaintiff's argument well-taken. The court will address each argument below.

As noted, *pro se* litigants are not exempt from Rule 11 sanctions simply because they are unrepresented by counsel. *Graham v. Fleissner Law Firm*, No. 1:08-CV-00031, 2008 WL 2169512, at *4 (E.D. Tenn. May 22, 2008); *Bus. Guides, Inc. v. Chromatic Communs. Enters.*, 498 U.S. 533, 564 (1991) (stating that, "[r]equiring *pro se* litigants to make the Rule 11 certification ensures that,

in each case, at least one person has taken responsibility for inquiry into the relevant facts and law."). However, the Supreme Court has held that courts should liberally construe complaints filed by *pro se* plaintiffs, and not hold them to the same stringent standards that Rule 11 requires of attorneys. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). The Sixth Circuit has held that district courts should afford *pro se* plaintiffs a degree of latitude when "dealing with sophisticated legal issues," but not when encountering "straightforward procedural requirements that a layperson can comprehend as easily as a lawyer." *Jourdan v. Jabe*, 951 F.2d 108, 109 (6th Cir. 1991.) When determining whether a party's conduct warrants Rule 11 sanctions, the Sixth Circuit has directed district courts to consider, "whether an individual's conduct was reasonable under the circumstances." *Union Planters Bank v. L&J Dev. Co.*, 115 F.3d 378, 384 (6th Cir. 1997). The advisory committee notes of Rule 11 list several factors a court may consider when deciding a motion for sanctions. *See* Fed. R. Civ. P. 11 advisory committee's note to 1993 amendment. Those factors include:

> [w]hether the improper conduct was willful, or negligent; whether it was part of a pattern of activity, or an isolated event; whether it infected the entire pleading, or only one particular count or defense; whether the person has engaged in similar conduct in other litigation; whether it was intended to injure; what effect it had on the litigation process in time or expense; whether the responsible person is trained in the law; what amount, given the financial resources of the responsible person, is needed to deter that person from repetition in the same case; what amount is needed to deter similar activity by other litigants: all of these may in a particular case be proper considerations. The court has significant discretion in determining what sanctions, if any, should be imposed for a violation, subject to the principle that the sanctions should not be more severe than reasonably necessary to deter repetition of the conduct by the offending person or comparable conduct by similarly situated persons.

*Id. Graham*, 2008 WL 2169512, at *5, provides some insight regarding when sanctioning a *pro se* plaintiff is appropriate. In that case, the defendants sought Rule 11 sanctions against a *pro se* plaintiff when said plaintiff initiated a suit in federal court, alleging that the defendants violated her

Fourteenth Amendment rights, after previously filing identical or similar claims in state court that were subsequently dismissed. *Id.* Evaluating Rule 11 and its advisory committees' notes, the court held that the plaintiff's conduct did not warrant sanctions. *Id.* In relevant part, the court stated that:

> [t]his is Plaintiff's first time filing a suit in federal court, and there is no indication she is an experienced litigator or that she was aware of the impropriety of the claims she brought in this case. There is no indication she knew her claims were frivolous or that she pursued her claims to harass Defendants. Nevertheless, now Plaintiff knows she cannot file frivolous complaints and that she will be held accountable if she does so in the future.

*Id.* In this case, the court determines that Plaintiff's conduct does not warrant sanctions for the reasons discussed hereafter. Defendants state that Plaintiff violated Rule 11 because she had a legal obligation to research both the facts and law of her case, prior to filing her suit, and that she failed to do so because her Complaint includes, "numerous factual issues and [a] pervasive lack of foundation [for Plaintiff's claims] . . . ." (Mot. at PageID #409, ECF No. 21.) Defendants particularly take exception to Plaintiff's request for additional time to gather evidence and information to respond to Defendants' prior Motion to Dismiss (ECF No. 7). (*Id.*; *see also* ECF No. 16.) However, Defendants' argument fails because the court finds that Plaintiff's claims while ultimately dismissed for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) (*See* ECF No. 27) possessed evidentiary support because the facts and claims presented in Plaintiff's Complaint (ECF No. 1) relate to Plaintiff's alleged assault by Mr. Patrick, and Plaintiff's efforts to expose Defendants' alleged corruption in thwarting any attempts to investigate Mr. Patrick. (*See generally* Compl., ECF No. 1.) To support her allegations and claims, Plaintiff attached seventeen different attachments that she believed not only demonstrated the veracity of her allegations, but also conclusively established that Defendants violated her constitutional rights. (*Id.*) Despite Plaintiff misunderstanding the legal underpinnings of her case, her claims clearly possessed an evidentiary basis. The court fails to see how Plaintiff's request for additional time (ECF No. 16)

to respond to Defendants' prior Motion to Dismiss (ECF No. 7) evidences her lack of investigation or thorough research of her case and claims.

The court also finds Defendants' argument that Plaintiff acted in bad faith "by the continued pursuit of her baseless and supported claims", unpersuasive. (Mot. at PageID #409, ECF No. 21.) Defendants cite to Comstock's letters to Plaintiff to establish that Plaintiff was aware of her claims' deficiencies. (*See* Mot., Ex. A at PageID #415  16, ECF No. 21-1 (stating that, "[t]he issues which you have raised are almost identical to those addressed [in *Viola*] . . . For your benefit, I have enclosed copies of both of those case decisions . . . As a pro se litigant, I will provide the benefit of the doubt to you and will assume that prior to filing this complaint you neither knew about the rulings in the *Viola* case nor had performed sufficient research . . . .")). While *Viola* was analogous and its legal determinations similarly dispositive of Plaintiff's actions, Plaintiff's continued pursuit of her lawsuit   after Comstock's letters   was not in bad faith because Plaintiff believed that her case presented different facts and arguments than Viola's. (*See* Opp'n at PageID #453, ECF No. 25 (stating that, "the underlying facts and law related to the instant action are completely unrelated to any claims Mr. Viola may have concerning Mr. Kasaris.")). Given Plaintiff's belief that her case was different from Viola's, it was not unreasonable for Plaintiff to continue to litigate her case. Furthermore, given Plaintiff's status as a *pro se* litigant, the court finds that the legal defects of her claims, even in light of *Viola*, are not deserving of sanctions.

Defendants next assert that Plaintiff did not subjectively believe that Defendants violated her First Amendment rights because Plaintiff continued to blog about Defendants, even after she expressed fear of retaliation. (Mot. at PageID #410, ECF No. 21.) However, Defendants' argument is not well-taken because the gravamen of Plaintiff's First Amendment claim was primarily related to her allegations that Defendants' cease-and-desist letter   that Defendants sent in response to Plaintiff's mailed postcards regarding Kasaris's alleged corruption   chilled her speech. (*See*

*generally* Compl., ECF No. 1.) The court fails to see how Plaintiff's blog posts negate her belief that Defendants violated her First Amendment rights, or her fears of future retaliation for similar actions.

Finally, the court disagrees with Defendants' contention that Plaintiff's conduct warrants sanctions because she is allegedly litigating against Defendants in conjunction with Viola. (Mot. at PageID #411, ECF No. 21.) Defendants state that:

> [i]f [Plaintiff's alleged improper conduct is] left unchecked and unsanctioned, plaintiff will continue the pattern of behavior exhibited by Viola, namely filing a baseless harassing complaint against Daniel Kasaris, his associates, friends, and anyone tangentially related to Viola's prosecution only to have the case dismissed on the pleadings and then file a nearly identical complaint in different court.

(*Id.* at PageID #413.) Plaintiff counters by stating that her case is separate and unrelated to Viola's. (Opp'n at PageID #453, ECF No. 25.) However, circumstantial evidence would suggest otherwise. For example, Plaintiff sought to intervene in Viola's most recent federal action against Defendants in the Southern District of Ohio, which the court denied. *See Viola v. Yost*, No. 2:21-cv-3088, 2022 WL 203505 (S.D. Ohio Jan. 24, 2022). Thus, Defendants' argument regarding Plaintiff's possible collusion with Viola is certainly not unfounded. But, while Plaintiff's claims are similar to Viola's and her action could be a part of a coordinated effort to seek retribution against Defendants, the court finds that Plaintiff's actions are not deserving of sanctions. After all, she was not allowed to intervene in *Viola*, 2022 WL 203505, Plaintiff certainly deserved the ability to test her claims. Furthermore similarly to *Graham*, 2008 WL 2169512, at *5 and differently than *Viola*, 2022 WL 203505 this is Plaintiff's first time filing these particular claims in federal court, and there is no indication that she is a vexatious litigator. Finally, "[t]here is no indication [that Plaintiff] knew her claims were frivolous or that she pursued her claims to harass Defendants." *Id.*; *Cf. Woolum v. Seabold*, 902 F.2d 1570 (6th Cir. 1990) (affirming sanctions against a *pro se* litigant whose claims had been found to be meritless on two other occasions and stating, "because [the plaintiff's claim]

was found meritless in two prior actions and because [the plaintiff] is an experienced litigant, we find that his filing of exactly the same claim a third time was not objectively reasonable . . . Accordingly, we AFFIRM the imposition of sanctions."). Accordingly, the court concludes that Plaintiff's conduct, in pursing her claims against Defendants, does not warrant the imposition of sanctions at this time.  This decision does not portend the outcome should she continue to file such claims.

### IV.  CONCLUSION

For the foregoing reasons, the court denies Defendants' Motion (ECF No. 21).

IT IS SO ORDERED.

/s/ SOLOMON OLIVER, JR.
UNITED STATES DISTRICT JUDGE

May 3, 2022